Your argument in the United States v. Davis, Mr. Foster. Good morning. May it please the court. It's crucial, especially in this time where public trust in some of the institutions of government is quite low, to start with the fact that Mr. Davis, in this case, testified in his behalf and denied three of the four counts. On two of those counts, the ones on which he was acquitted, the government called three witnesses who contradicted what Mr. Davis said on that point, who said they knew him, that they conspired with him, that he did what he was charged with doing, and the jury credited his denial and acquitted him. How do you know they credited him? Well, the acquittal is certainly the best evidence of that. Well, that's not evidence of that, necessarily. The jury could have concluded that there was an element missing or the timing was missing or this was that, or they could have even done what a lot of juries do, they compromise for some reason or other. I mean, we really don't know whether they credited these witnesses, which is your thesis. We have to conclude that they discredited these witnesses. Yes, and as to Your Honor's point regarding compromise, which, of course, does happen, although it's not as... Well, I'm just saying that isn't what happened. I'm just saying we don't know what happened. And so you can't draw the conclusion that the jury acquitted because they disbelieved a particular witness. They acquitted, and then we have their verdict, and they acquitted. Maybe they thought it wasn't beyond a reasonable doubt, but the judge is looking at those witnesses and said, I found them convincing, and by preponderance of the evidence, boom, boom, boom, and made his findings. I think on the facts of this case, the finding, unless, as Your Honor says, it was a compromise, on these facts... I'm not suggesting that outcome. I'm saying there's an array of possibilities, and one could be the burden of proof. They said, well, I have some doubt. It probably happened, but I have some reasonable doubt, and they don't convict on that basis. And that is a very legitimate basis for distinction between what the jury... See, the Supreme Court has told us in the Powell case that we look at a jury verdict count by count, and we ask with respect to each count whether there was substantial evidence to uphold what the jury did. In the case of a conviction, in the case of an acquittal, that's the end of it. But we're not supposed to try to fit, oh, how did count one emerge with count five, and how do we make sense of it all? As I understand the Supreme Court's Powell decision, we go at it count by count. Was there evidence to support this? Was there evidence to support that? And when we start doing the other thing, how does this count fit with that count, you run into the problem that Judge Niemeyer has suggested, which is that we're taking our minds away from the evidence and into the jury room. And that's kind of a no-no. It is in terms of making the narrow legal decision as to the admissibility of evidence, which is, of course, the grounds for appeal of the trial in this case. How long was the trial here? Two days. Did you try the case? I did not. And these evidentiary rulings are discretionary calls by the judge, and you say they were inadmissible? Prosecutors said they were, and the judge ruled with the prosecutor. And we're only reviewing the convictions, and we're not reviewing the acquittals. Correct. As to the evidentiary rulings, though, there is a role for the judge, and that is the gatekeeper role. And so you've got to convince us it's an abuse of discretion as to each of them. There are three items. That's true. Three evidentiary issues. And what the argument is here, what I'm arguing to you, is that the court allowed in the evidence without any inquiry into the foundation for that evidence. That is, as I suggested in the brief, he ignored his duty as the gatekeeper, is what this court has said, the gatekeeper of the evidence. And what the court has to find to let in evidence, and we noted in the brief three of them, there was a direct statement that somebody else told me this. That is that we believe to be blatant hearsay. Well, your court is the gatekeeper, and the question, of course, is how high is the gate, and is the gate locked and everything? And then when we're talking about authentication, which is part of your claim here, the traditional rule is that authentication is not a high bar for admissibility. And the reason for that is that you don't want judges taking things away from the jury, and that's why we get this old business about weight rather than admissibility, and the jury is probably the best judge of authentication, as long as there's some basis from which the jury could find it was authentic. But don't our cases straight emphasize the point that the judge's gatekeeper, you know, shouldn't be locking and bolting the gate on the matter of authentication? That is true, but a low bar is not zero bar. There has to be something to show that the evidence is what the government says it is, and in the case especially of the text messages, more so than the phone call, but especially of the text messages, that is certainly true. There is nothing in the record to suggest to the court or anyone else that those text messages came from Mr. Davis. Oh, there's a lot in the record. Number one, the woman is sitting there on her phone with a cell phone, and she's texting back and forth getting messages from a person named Joseph Davis or Davis Other. Number two, those text messages talked extensively about where he was and where she was. She's at the mailbox. He's on the interstate. He's coming here. He's turning off here. And then ten minutes later, he shows up at the mailbox in accordance with what was in the text. And then number three, he testified that on that day he was texting with her. He said it was about some other subjects, but he didn't say it was about these texts. But the jury could draw the conclusion that she was texting with Davis. His name was on the screen. Their subject matter corroborated by the real conduct, real-world conduct. And the officer, the undercover agent, is sitting there taking pictures of it as it appears on the screen, and he said, I took those pictures. These are accurate pictures. It's not much else to do, is there? Well, I respectfully argue that there's two issues there. One is the issue of whether the text messages described a drug transaction, and on that I completely agree with the court, that there's plenty in there from context to say that it did. The other question is a lot of the texts were talking about making the arrangement. Are you going to show up? Where are you? He says, I'm on interstate now. And she says, well, I'm here. And then they're talking about meeting there, and then he does show up. Now, that links the text with the person who showed up who was identified as Davis. Well, of course, Ms. Metcalfe didn't testify, so the only identification of Davis as the person who was there at the transaction is from an officer who had never met him that's looking through two closed car windows in the middle of the night. What about circumstantial evidence that was him? A lot of them. You're talking about a specific identification they didn't call the CI. Right. But they put in a lot of evidence. And a lot of it, like that first point you do make about the hearsay from the CI, there was no objection. I mean, we have to review that for plain error. It wasn't open for the truth of the matter either. It was open to explain why he selected her. But there simply wasn't any objection to it. And that could be trial tactics. I assume it would be on the part of your – I mean, I ask you if you tried the case. I mean, lawyers don't always object to evidence that might have an objection sustained. They might have a tactical reason not to get involved in the issue at that point. That is certainly true. The government may not have, at that point, known whether it was going to call the CI or not. They ultimately decided they didn't need her. That is certainly possible. But I don't see how, in the context of this case, there is a strategic reason not to object to the evidence. You didn't object. You did not object. I mean, you were standing in the shoes of your predecessor lawyer. He didn't object. You didn't object. True. That makes it plain error review. That's correct. And within that plain error review, of course, this court has to look at what all the evidence was and would it have made a difference if, obviously, the first step was the evidence inadmissible. And I certainly contend that the statement that the informant told me that Mr. Davis was my supplier is inadmissible evidence. That's not a fair statement. What he said is that because she said she had purchased drugs from him, she could serve as an informant. In other words, that was a qualifier. That was the reason he decided to use her. But he didn't try to prove that those prior transactions occurred. He was basically saying that's the reason he used her as an informant. And I don't even think the jury would have taken it. They'd say, well, she was involved in drugs with him. But that is why she qualified as an informant and could provide good information. Well, that seems that I'd argue that that swallows up that there is no all hearsay then will be admissible in a drug case. That's whether it's offered for the truth of the matter. But in every criminal case, the investigator can offer evidence that they were told something. If it's for the truth of the matter, you can't do it unless there's an exception. All they were doing is setting the table for why they set up the control by. It was simply part of an explanation of how the control by came about. And we have that occasionally where something is part of a narrative of a case, but it isn't admitted for its truth. It's just admitted in order to make certain evidence understandable to a jury and to place it in context and just to indicate that it's not coming out of the blue. And that seems to be what the evidence was admitted for here. Well, I did offer the supplemental authority from the October case from the Second Circuit, which are very, very similar facts. A drug case where the officer testified that the reason I was investigating this person is because an informant told me he was a drug dealer. Was that up on plain air? I don't believe it was on plain air. And that makes a big difference because here you didn't give Judge Voorhees a chance. You didn't give him a chance to rule on the point. You didn't object. That's true. You didn't object. The proposition is you can't raise it on appeal except under plain air if you don't object. But that's correct. But that's why plain air review, I would argue, exists, is that just because somebody didn't object at trial, the appellate court is not going to let stand a conviction where there wasn't enough admissible evidence to prove beyond a reasonable doubt that the person did it, even if there was a failure to object at trial. If that's not the law, then there isn't even any plain air review. There's no need to review it at all. We get plain air review, but it's a stringent test when you don't give the trial court an opportunity. It certainly is a stringent test. I mean, you're mousetrapping the trial court, and that's not the way the system works. Well, that's correct if it were done on purpose. As I said, I wasn't there, but I significantly doubt it was done on purpose. You were there. Your predecessor was there. He had a lawyer there. And we have to assume that I would, that he'd do what he was doing. Well, I would not have mousetrapped a judge by making error on purpose so that I could then argue it on appeal. We're not blaming you at all because you didn't try the case. It's just the problem is you're stuck with it. I mean, you're just stuck with the record. That's true. And we are stuck with plain air review, and I certainly understand that, and I agree with Judge King that that is a very high burden. I do think . . . You've got some time on rebuttal, and you can tell us how you met it. All right. Thank you. Ms. Ray, let's hear from you. May it please the Court, I want to just highlight a few pieces of evidence that are not highlighted in my brief with respect to the authenticity of the text messages. A few other bits that I think are helpful. First of all, Berringer testified that the defendant met, he saw Davis meet with Metcalf to buy the Flex. We have two transactions. Two officers testified, both Berringer and Jenkins. It was the same person. I'm interested in hearing it, but why wasn't that in the brief? I just chose to highlight certain facts, and as I was reviewing for oral argument, I thought, oh, these are helpful. Basically, I was focusing on the facts that were specific around the admission of the text messages themselves, what Jenkins testified about those messages. I don't think it's an authentication problem. I think it's more a foundational problem for relevance. There's no question about what was offered was purported to be what it offered. In other words, there's a picture of a cell phone being used contemporaneously while he watched, and the question was whether the Davis that appeared on the cell phone, that was testified to, too, whether that Davis was the Davis who's the defendant in the case. So the real question is not authentication, it's relevance. It's whether this Davis was that Davis. And the linkup, I suggest, was probably provided by a lot of things, but one, she said she was texting, and number two, he shows up ten minutes later, pursuant to the text, consistent with the text, and then three, he confirms on his own testimony he was texting her that day. That's right, Your Honor. But Mr. Davis suggested it wasn't him, and I thought it would be helpful to sort of ---- That's not an authentication problem. The evidence was real evidence. That's right. It wasn't made-up evidence. It was authenticated. It just may not have been relevant. I agree. Well, I think that relevance is a low enough bar, but his defense is absolutely that it wasn't him. Right, right. That's right. And the question then, is there enough in there for the jury to link up those text messages relating to a fellow named Joseph Davis or Davis other to the defendant? And the answer to that is not a question of authentication. The answer to that is whether there's evidence to support the linkage. And he doesn't actually challenge the sufficiency of the evidence. But in addition to that, I note that the defendant himself admitted that he was the one who appeared at the earlier flex transaction, and the officers testified it was the same person. So, in other words, we have actually lots of evidence that it was the same person who went to both transactions, and Jenkins testified that Metcalf herself said it was Davis on the text messages. So the deal was at the defendant's apartment complex. There was a lot of evidence that linked up the two. Now, addressing briefly the statement that Jenkins testified about Metcalf having identified Davis as a supplier early on, it was not offered for the truth of the matter asserted. I also note that Barringer testified to the same thing on pages 162 to 63 of the joint appendix, and Davis doesn't actually challenge that particular testimony. Which one is Barringer? He was one of the agents that was investigating. So he testified that he was testifying at the very beginning of the trial about how they began and identified the defendant as a... So you had two officers testifying to the same thing. Exactly, and neither was objected to at the time. Mr. Foster did not bring up the sentencing issue, but I just wanted to refer the court to the statement of reasons that is in the joint appendix in terms of consideration of the mitigating evidence. Judge Voorhees actually reviewed for two pages of the transcriptor about all the arguments that he heard and considered, and he explicitly said, I was at trial, I credited the testimony, I believed the testimony, he said I was there, and obviously there was evidence of far more than four and a half kilograms of methamphetamine that were trafficked. Is there anything further? I don't think so, Your Honor. If you have no further questions, we request the court affirm the district court. All right. Thank you. Mr. Foster. Thank you. I would like to talk a little bit about the sentencing issue, but first I would like to address Judge Niemeyer's point or discussion with Ms. Ray about whether it's an authentication question or not. I certainly understand everything that was said, but the Vayner case, which we cited in the brief from the Second Circuit, that addressed a very, very similar question, and that had to do with the introduction of a web page that was allegedly created by the defendant in that case. And the Second Circuit did treat it as an authentication question. What they said is that the government, the gatekeeper, not only has to find that there's enough evidence that it is something that existed on the web, but to be authentic, there has to be evidence shown in the court that it was created by the person the government alleged created it. And the analogy in this case, which is not perfect, but it's very good, is that there is no question, as Judge Niemeyer pointed out, that the evidence which was presented to the jury were photographs of actual text messages, which had nobody suggesting the photographs were doctored. There's no question that it was of a cell phone that actually existed. There's no question that the pictures were of what was on the cell phone that actually existed. So everything there is purported what it is. To what your objection is, and to the extent that it goes to content, there may be some kind of authentication issue, whether somebody manufacturing those texts coming in, or whether those texts were with a girlfriend that was just labeled Davis. But it seems to me what he was saying is, I photographed these things, she was texting with Davis, and these are the pictures of what purported to be Davis. Now the question is, was it actually Davis? And to me, that sounds more like trying to link up that text with Davis, and my suggestion was the real-world evidence links it up. But whether you call it authentication or foundational, I think it's more relevant as to whether there's no doubt the text message was on her phone, in terms of authenticity. She had that text message, he photographed it, and she was responding to it. The question is, who was on the other end? And the question, was it Davis? And it seems to me that the circumstantial evidence is pretty strong to suggest that the jury could consider whether it was Davis or somebody else. Davis was listed twice in her cell phone. I'm sorry? Davis or Joseph was listed twice in her cell phone? There was a listing for Joseph Davis and there was a listing for Joseph Other. I believe that the relevant text in this case that Judge Niemeyer is talking about, about talking about meeting and contacts, came from Joseph Other. And the government's position, at least the prosecution in the trial, was that the Joseph Other was Joseph Davis? Yes. And so the question is whether the evidence was sufficient for the jury to so find. Yes, although I would go back further, and to Judge Niemeyer's point, that the evidence in this record that the person sending those texts was Joseph Davis, is very, very, very thin. And thin, even if you're right on that. I'm sure Ms. Ray doesn't agree with you. But if you were right that it was thin, thin's enough. We have to look at it in the light most favorable to the prosecution, to the jury. I agree. I think the assumption that's being made here, though, by some of the, well, I shouldn't. One shouldn't assume from this record that Stephanie Metcalf told these officers where those entries in her phone came from. There is no evidence in this record that that happened. She's sitting there texting. And as she's texting, the officer's watching and taking pictures. As she's texting, she's saying to him in the text on those Joseph R or Joseph Other, I mean, Joseph Davis or Joseph Other, she is saying, where are you? And he's saying, I'm on I-80, whatever it is, I-80, whatever he was on. And then he says, I'm about, what, 10 minutes away? And she says, well, I'm here at the mailbox waiting. Not the mailbox, wherever, yeah, mailbox, I guess, waiting. And then 10 minutes later, he shows up. Now, that's the completion of the dialogue. It seems to me that's evidence that he was texting, she was texting Davis in real world texting. And he was watching it, and she was responding as they came. Now, if it was a girlfriend or some other Davis, then it would have to be a big coincidence that Davis shows up pursuant to those, that information with respect to somebody else. And he's basically saying, I'm coming, and I'll meet you there at the mailbox. And I don't, I think it's pretty convincing, but I'm not sure it's an authentication problem because all of those things are real things. It's a relevance problem as to whether those texts related to your defendant, your client. And I think there's enough evidence for the jury, you don't have to concede it, but it sounds to me like there's enough evidence for the jury to consider that, isn't it? Well, I see I'm over time. May I give a brief answer to that? Give a very concise answer, if you would, because I have a feeling that you would repeat some of the things that you've earlier said. And I do think we understand your points. And as to the sentencing issues, you haven't waived those in any way, and you've covered them thoroughly in your brief, and we understand what you're saying with that. And I see that you're court-appointed also, Mr. Foster, and I'd like to express the appreciation of the court for your services and for bringing these issues before us. Thank you very much. We'll come down to the council and move into our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King